UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,             Case No. 3:20-cr-371

      Plaintiff,

    v.                                         MEMORANDUM OPINION
                                                  AND ORDER

Garrick "Gary" Johnson, *et al.*,

      Defendants.

## I.    INTRODUCTION AND BACKGROUND

On June 14, 2023, a jury convicted Defendant Garrick "Gary" Johnson of Count 12,[1] extortion under color of official right, in violation of 18 U.S.C. § 1951, while acquitting him of Count 5, which charged him with the same offense based upon separate conduct. (Doc. No. 238). During trial, Johnson made a motion for a judgment of acquittal following the government's submission of its case and renewed his motion after all evidence has been presented. I took Johnson's motions under advisement and granted leave to the parties to submit additional briefing regarding those motions.

Johnson subsequently filed a written motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, pursuant to Rule 33 for a new trial on the count of conviction. (Doc. No. 243). The government filed a brief in opposition to Johnson's motion,

---

[1] By the parties' agreement, Counts 5 and 12 of the Superseding Indictment were referenced in the jury instructions and the verdict form as the first count and the second count, in order to reduce risk of confusion or prejudice arising from the charges against Johnson's three co-defendants. I will refer to the charges here as stated in the Superseding Indictment.

(Doc. No. 254), and Johnson filed a brief in reply. (Doc. No. 255). For the reasons stated below, I deny Johnson's motions.

## II.  STANDARD

Rule 29 provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "If the court reserves decision [on the motion], it must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b). Rule 29 permits a court to set aside a jury's guilty verdict and enter an acquittal. Fed. R. Crim. P. 29(c)(2). A court considering a Rule 29 motion, "while reviewing the record in the light most favorable to the prosecution, should grant relief only if it is found that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *United States v. Abner*, 35 F.3d 251, 253 (6th Cir. 1994) (citing *Jackson v. Virginia,* 443 U.S. 307, 324 (1979)).

Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A Rule 33 motion for a new trial "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). The Rule permits a district court to "'consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice.'" *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988) (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)) (further citation omitted). But Rule 33 motions should be granted "'only in the extraordinary circumstances where the evidence preponderates heavily against the verdict.'" *Ashworth*, 836 F.2d at 266 (quoting *Turner*, 490 F. Supp. at 593).

### III. ANALYSIS

Johnson presents three arguments. The first is that "Hobbs Act Extortion Under Color of Official Right does not include mere bribery, and the government introduced no evidence of actual extortion." (Doc. No. 243 at 3). As Johnson acknowledges, he previously raised this argument in a pretrial motion to dismiss the charges against him. At that time, Johnson argued "[n]either count alleges anything that could actually be described as extortion were it not for the Supreme Court decision in *Evans v. United States*, 504 U.S. 255, 260 (1992)," and he contended *Evans* was wrongly decided and should be overturned. (Doc. No. 184 at 2-4). I denied Johnson's motion because I am bound by the Supreme Court's decision in *Evans*, and the Court clearly held that § 1951 applies to circumstances such as those presented in this case. (Doc. No. 193 at 2). Johnson points to no new facts or law which might suggest this conclusion was incorrect. Therefore, I deny his motions on this basis.

Jumping ahead, Johnson's third argument is that he is entitled to a judgment of acquittal because the investigative techniques used by law enforcement officers during the course of the events leading up to his indictment "amount to truly outrageous conduct that ought to shock the conscience." (Doc. No. 243 at 3) (incorporating by reference Doc. No. 212). Johnson contends that the actions of the Federal Bureau of Investigation (including asking community members opposed to an internet café involved in the investigation to sign nondisclosure agreements and providing those community members assurances that the internet café at issue would never actually come to fruition) deprived him of "evidence from the counterfactual world in which the hospital and neighborhood association continued their opposition to the [Special Use Permit ("SUP")] and the defendant thus withheld his support for the SUP." (Doc. No. 212 at 10).

As Johnson again acknowledges, I previously denied his motion to dismiss based upon "[t]hese [alleged] due process violations." (*See* Doc. No. 263 at 8-26) (denying Johnson's motion for

3

reconsideration of motion to dismiss based upon nondisclosure agreements). Further, the Sixth Circuit has "soundly rejected the 'outrageous government conduct' defense, looking instead to the doctrine of entrapment to assess a defense that sounds in inducement." *United States v. Amawi*, 695 F.3d 457, 483 (6th Cir. 2012). *See also id.* (citing *United States v. Blood,* 435 F.3d 612, 629 (6th Cir. 2006), for the "holding that the outrageous government conduct defense is not available where the defense is based either on a theory of government inducement . . . or on a theory that the undercover officer's involvement in creating [the] crime was so significant that criminal prosecution violates due process") (citation and internal quotation marks omitted) (ellipses in *Amawi*).

That, in sum and substance, is Johnson's argument – the FBI created the circumstances which led to his vote in favor of the SUP at issue after having accepted money from Nabil Shaheen and that the FBI's conduct violated his due process rights. Binding Sixth Circuit caselaw holds that this defense is not available to Johnson, and it cannot provide the basis for a judgment of acquittal pursuant to Rule 29.[2] *See, e.g., Amawi*, 695 F.3d at 483. Therefore, I deny Johnson's motions to the extent they are based upon his theory of outrageous conduct and due process violations.

Next, I consider Johnson's second argument, which has two subparts. In the first subpart, Johnson contends § 1951 "is void for vagueness as applied." (Doc. No. 243 at 3). He argues the line between legal campaign contributions and illegal bribes is unclear and that the law "fails to establish a standard that would allow a reasonable person to discern the difference between lawful and constitutionally protected campaign activity and unlawful corruption." (*Id.* at 8).

I previously considered and rejected this argument:

> "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage

---

[2] Moreover, Johnson does not explain how the FBI's conduct, which arose within the context of the events in January to March 2020 leading to Count 5 of the Superseding Indictment (a charge on which the jury found Johnson not guilty), provides a basis for acquittal on Count 12, a charge arising from separate conduct occurring in April 2020. (*See* Doc. No. 105; Doc. No. 237 at 16).

4

> arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). . . .
>
> In this case, as in others, the law "require[s] more than acts that may be of value to another. [It bars] '*quid pro quo* corruption – the exchange of a thing of value for an "official act." '" *United States ex rel. Martin v. Hathaway*, [63 F.4th 1043, 1048 (6th Cir. 2023)] (quoting *McDonnell v. United States*, 579 U.S. 550, 574 (2016)). *See also United States v. Sittenfeld*, 522 F. Supp. 3d 353, 377 (S.D. Ohio 2021) ("[I]f there is one thing that everyone knows federal bribery law prohibits, it is agreeing to undertake official action in exchange for campaign contributions.").

(Doc. No. 193 at 2).

Johnson points to the government's closing argument, as well as testimony from Shaheen and two FBI agents, and he argues this argument and testimony demonstrates "confusion about the line between plainly lawful and illicit conduct during the trial." (Doc. No. 243 at 13). But ultimately, the legal understanding of witnesses, law enforcement officers, and even the Assistant United States Attorneys assigned to prosecute this case is not relevant to the void-for-vagueness question. I instructed the jury regarding the law which applies in this case, and I expressly told the jury that they must disregard any statement of the law from anyone else if that statement differed from what I told them about the law. (Doc. No. 237 at 3, 16-27). And jurors are presumed to follow the court's instructions. *See, e.g., United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995) (citing *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993)). Johnson fails to show § 1951 is unconstitutionally void as applied to him and I deny his motion on this basis.

In the other subpart of Johnson's second argument, he contends "no reasonable juror could find that the government proved bribery beyond a reasonable doubt." (Doc. No. 243 at 3). Johnson asserts the only evidence of an illicit agreement between himself and Shaheen is found in the recording of an April 20, 2020 phone call between Shaheen and Johnson, in which Shaheen told Johnson he and Ali Mahmoud would give Johnson $2,000 as a campaign contribution "because [Johnson was] gonna help out on that," with the "that" being a vote on an SUP for an internet café Mahmoud sought to open. (*Id.* at 15-16) (citing Gov't Ex. 19 at 4:59). (*See also* Gov't Ex. 19 at 1:55-

5

2:21). In the recording, Johnson first responded "okay" before later stating "I don't want you to think I'm doing it because you're . . . donating money to my campaign. I'm doing it because it's the right thing to do." (*Id.* at 5:07, 5:25-31). Johnson contends this "immediate disclaimer . . . voided any agreement, perceived or actual, between the two men." (Doc. No. 243 at 16).

But these statements were not all the jury had to go on. Earlier in the phone call, Shaheen said:

> So whatever you can – whatever you can. And don't worry about tomorrow. That's ah . . . advertisements. Me and Ali, I'll take care of it. I'll just, ah, I-I can't show I'm giving you a lot because, you know they're just going to get on my ass. . . . So what I'm going to do . . . .

(Gov't Ex. 19 at 4:37-47). Johnson then responded "I don't want that. You know I don't want that at all." (*Id.* at 4:47-55).

Two days later, Shaheen and Johnson discussed the unsuccessful SUP vote. Shaheen told Johnson he "appreciate[d Johnson's] support" on the vote and offered to give him the $2,000 in cash or by check. (Gov't Ex. 20 at 2:04-21). Shaheen stated he would "rather nobody knows about [it]." (*Id.*). Johnson told Shaheen he would accept the cash "but this has got to stay between me . . . and you." (*Id.* at 2:22-25).[3]

Immediately after exchanging the cash, Johnson and Shaheen discussed about how to respond to the denial of the SUP application. (Gov't Ex. 20, beginning at 2:38). Johnson told Shaheen to call the Toledo Lucas County Planning Commission to determine whether Mahmoud could appeal the denial of his application because "you don't want it to come through one of us 'cause it's gonna look like . . . quid-pro[-]quo . . . ." (Gov't Ex. 20 at 3:20-25).

---

[3] Johnson argues "[t]his exchange does nothing to create an explicit *quid pro quo*" and that "this sort of passing comment by a busy politician and businessperson, reacting on the fly to the statements of an undercover operative, is not the sort of thing that can demarcate the line between lawful and criminal conduct." (Doc. No. 255 at 3, n.1). But Johnson does not cite to any caselaw in support of this argument, which fails to take into account *Jackson*'s mandate that the evidence be viewed in the light most favorable to the government. *See Jackson*, 443 U.S. at 324; *Abner*, 35 F.3d at 253.

Johnson contends this evidence is insufficient because, in his view, the jury's handwritten post-verdict note "is directly at odds with the [government's] claim that Mr. Johnson was doing anything other than what he claimed when he said he would not accept the campaign contribution in exchange for official action." (Doc. No. 255 at 3). In that note, the members of the jury stated their belief that Johnson "is an honest, genuine person with good intentions who was caught up in a bad situation." (Doc. No. 240 at 1). Johnson argues that, in light of this statement, "[t]he only reasonable explanation for the jury verdict is that the jury concluded that Gary *understood* Mr. Shaheen's suggestion about a *quid pro quo*, and, upon having reached this conclusion, the jury read the instructions to require conviction on this basis alone." (Doc. No. 255 at 4) (emphasis in original).

This argument fails for two reasons. First, it reads more into the jury's note than the language of that note permits. Johnson interprets the jury's statement of its belief Johnson was "an honest, genuine person" to mean that the jury must have believed that Johnson was <u>only</u> or <u>always</u> honest. It is no great stretch to say Johnson's preferred interpretation of the jury's statement is unrealistic.

Johnson took the stand to testify in his defense. He attempted to explain how these events unfolded, including his understanding of the donor's belief of the effect of the payment. But Johnson also testified about his general upbringing, education, work, and community activities. The jury could well have concluded there was much favorable in Johnson's personal history, and he ultimately should not be judged at sentencing or by the public solely through the lens of the crime for which they convicted him here. The jury is empowered, of course, to assess the testimony of all witnesses, and believe all, some, or none of a witness's testimony. This includes Johnson's testimony.

Also noteworthy is the introduction in the jury's note. There, they stated they reached their unanimous guilty verdict with "heavy hearts." (Doc. No. 240 at 1). This disclosure provides balance and context to the jury's favorable comments that Johnson "is an honest, genuine person with good intentions who was caught up in a bad situation." (*Id.*). That the members of the jury expressed a favorable view of Johnson, despite their verdict, is a tribute both to the difficult work jury deliberation can entail and the essential protections trial by jury affords. The importance of the jury's position and duty in general cannot be underestimated.

Thomas Jefferson, in his July 11, 1789 letter to Thomas Paine, expressed his passionate belief of the vital importance of inclusion of the right to trial by jury in the United States Constitution. Jefferson described trial by jury as "the only anchor, ever yet imagined by man, by which a government can be held to the principles of its constitution." That right was enshrined in significant documents, including Magna Carta in A.D. 1215.

In our local federal court, my fellow judges and I regularly remind jurors – as I did with the perspective venire in this case – that jury service is the highest service a citizen can perform for her country other than service in the military during times of active combat. This belief was passed on to us by our late colleagues, Judges John W. Potter and Nicholas J. Walinski, Jr., both of whom served our country valiantly and with recognition and distinction in the United States Armed Forces during the Second World War.

Here, the jury struggled with one of its verdicts and reported they were unable to reach a unanimous verdict. Accordingly, I gave the jury the Sixth Circuit's Pattern Instruction for such instances, commonly referred to as an *Allen* charge. Clearly, the jury here took its duty and oath to heart and ultimately returned unanimous split verdicts. That the jury was aware of the toll this

8

verdict would inflict on Mr. Johnson and his family is a tribute to their humanity, but in no way an indictment of the validity of their verdict.[4]

Second, Johnson's argument cannot overcome the presumption that the jurors followed the instructions of law I gave them. *Tines*, 70 F.3d at 898. I instructed the jury "that the government must show that the contours of the proposed exchange were clearly understood by both the public official and the payor," and that Johnson's understanding could be proven by what he did, how he acted, and "any other facts or circumstances in evidence to show what was in the defendant's mind," in addition to evidence of what he said. (Doc. No. 237 at 26, 28). Nothing in the jury's note demonstrates that the members of the jury failed to understand these instructions.

Moreover, in *Evans*, the Supreme Court upheld the defendant's conviction after "assum[ing] that the jury found that petitioner accepted the cash <u>knowing that it was intended to ensure</u> that he would vote in favor of the rezoning application and that he would try to persuade his fellow commissioners to do likewise." *Evans*, 504 U.S. at 257 (emphasis added). In other words, the *Evans* Court found the defendant's knowledge of the intentions of the person offering the bribe was integral to the jury's finding of guilt. Johnson's contention that *Evans* was wrongly decided does not provide a basis for rejection of its holding.

I conclude a rational juror, viewing these conversations in the light most favorable to the government, could conclude the government met its burden of proof beyond a reasonable doubt and established that there was a clear, mutual understanding between Shaheen and Johnson that Shaheen and Mahmoud gave Johnson $2,000 in exchange for Johnson's favorable vote on Mahmoud's SUP application. Therefore, I deny Johnson's Rule 29 motions on this basis.

---

[4] Johnson properly requested that I poll the jury after reading the guilty verdict on Count 12. All 12 jurors individually affirmed their guilty verdict in open court.

Finally, Johnson argues I should grant him a new trial because the evidence would have supported a finding of not guilty on Count 12 if the Sixth Circuit pattern instruction on entrapment had been requested and given, and because the manifest weight of the evidence does not support the verdict.  (Doc. No. 243 at 20-22).  Johnson's arguments are not persuasive.

First, as he acknowledges, he did not pursue an entrapment defense at trial, and his choice not to pursue this defense is sufficient on its own to defeat his post-trial motion challenging the jury's verdict.  *See Amawi*, 695 F.3d at 482-83 (affirming district court's denial of defendant's Rule 29 motion for judgment of acquittal based upon entrapment because defendant waived the defense by not requesting an entrapment defense at trial).

Second, it is Johnson's burden under Rule 33 to show "the evidence preponderates heavily against the verdict."  *Ashworth*, 836 F.2d at 266 (citation and quotation marks omitted).  Along with the jury, I observed all of the witnesses and heard all of the evidence.  Having done so, I conclude Johnson fails to show justice requires that the jury's verdict of guilty on Count 12 be set aside and a new trial be ordered.  Therefore, I deny his Rule 33 motion.

## IV.  CONCLUSION

For the reasons set forth above, I deny Johnson's Rule 29 and 33 motions.  (Doc. No. 243).  The clerk will schedule a sentencing date and the case is referred to the United States Pretrial and Probation Office for preparation of a Presentence Report.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge
